## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

NEW OIL CHRISTIAN CENTER,

       Plaintiff,

  v.

GUIDEONE MUTUAL INSURANCE
COMPANY,

       Defendant.

**MEMORANDUM OF LAW &
ORDER**
Civil No. 22-2136 (MJD/ECW)

Kenneth U. Udoibok, Kenneth Ubong Udoibok, P.A., Counsel for Plaintiff.

Matthew Janzen and Tony R. Krall, Meagher & Geer PLLP, Counsel for
Defendant.

## I.    INTRODUCTION

Before the Court are Plaintiff New Oil Christian Center's ("New Oil")

Partial Motion for Summary Judgment and Defendant Mutual Insurance

Company's ("GuideOne") Motion for Summary Judgment.  (Docs. 73, 92.)  For

the reasons stated below, the Court grants summary judgment in favor of

Plaintiff and remands this case to the Appraisal Panel for a final determination as

to the costs to comply with Minneapolis's city code and ordinances.  The Court

also grants Plaintiff's unopposed motion for pre-award and post-award interest.

## II.     BACKGROUND

### A.     Procedural History

GuideOne issued replacement cost coverage insurance for New Oil's church building located in Minneapolis, Minnesota, which included limitations on coverage for roof surfacing.  (See Doc. 81-1 at 1.)  Around August 14, 2020, New Oil filed a claim for roof damage caused by wind and hailstorms that occurred sometime between August 10 through August 14, 2020.  (Doc. 77-2.)  GuideOne denied coverage for the loss, finding that the damage was pre-existing and occurred before the Policy took effect and therefore was not covered.  (Id.)

New Oil challenged this decision, but GuideOne continued to deny coverage.  (Doc. 77-1; Doc. 77-4.)  New Oil eventually demanded an appraisal.  (Doc. 77-4.)  Before any appraisal could occur, on August 10, 2022, New Oil sued GuideOne in Hennepin County District Court.  (Doc. 1-1.)  GuideOne subsequently removed the action to this Court and moved the Court for an order to compel appraisal.  (Id.)

On February 28, 2023, Magistrate Judge Elizabeth Cowan Wright granted the motion and ordered the Parties to undergo the appraisal process.  (Doc. 41.)  The Appraisal Panel consisted of two appraisers, Tim Barthelemy, Jeff Nonhof,

and an umpire, Tom Vesel.  (Doc. 78-2.)  Following the appraisal, the Appraisal

Panel awarded a Replacement Cost Value ("RCV") of $259,361.00 and an Actual

Cash Value ("ACV") of $145,578.00.  (Id.)  In the RCV and ACV awards, the

Appraisal Panel also included an additional line for "Permit" expenses that were

to be "paid when incurred." (Id.)

| Item | Loss Replacement Cost | Loss Actual Cash Value |
|------|----------------------|------------------------|
| Umpire (Signed): *Tom Vesel* | Date: 9/12/2023 | |
| 1. COPPER COMPONENTS | $252,851.00 | $139,068.00 |
| 2. GENERAL CONDITIONS | $6510.00 | $6510.00 |
| 3. PERMIT | PWI | PWI |
| 4. | | |
| 5. | | |
| Total | $259,361.00 | $145,578.00 |

We certify that we have conscientiously and impartially performed the duties assigned to us in accord with the appraisal provisions of the policy and do hereby award the amounts established above for the described loss.  **Minimum of two signatures required.**

Witness our hands:

Date: 9/12/202_ Appraiser: *signature*
Date: 9/12/2023 Appraiser: *signature*
Date: 9/12/2023 Umpire: *signature*

(Id.)  The next day, GuideOne paid New Oil $143,578.00.[1]  The Parties also

sought clarification from the Appraisal Panel and asked the Appraisal Panel to

break down the costs of the award so that they could interact with the policy and

to clarify whether it meant to award New Oil the costs to comply with

Minneapolis's city code and ordinances ("compliance costs").  (Docs. 78-3 at 1-9;

---

[1] The Actual Cash Value awarded by the Appraisal minus the deductible.

3

81-14 at 2.)  The Parties agree that the compliance cost issues were presented to the Appraisal Panel during the appraisal process.

In response, the Appraisal Panel provided the following breakdown:

| Umpire (Signed): *Tom Voss* | | Date: 9/12/2023 | |
|---|---|---|---|
| **Item** | | **Loss Replacement Cost** | **Loss Actual Cash Value** |
| 1. | Copper Components - Roofing | $98,406.00 | $54,123.00 |
| 2. | Built-Up Roof Work | $24,000.00 | $13,200.00 |
| 3. | Copper Components - Non-Roofing | $130,445.00 | $71,745.00 |
| 4. | General Conditions | $6,510.00 | $6,510.00 |
| 5. | Permit | PWI | PWI |
| | **Total** | **$259,361.00** | **$145,578.00** |

We certify that we have conscientiously and impartially performed the duties assigned to us in accord with the appraisal provisions of the policy and do hereby award the amounts established above for the described loss.  **Minimum of two signatures required.**

**Witness our hands:**

| Date: | 10/20/2023 | Appraiser: | *Jeff Nonhof* |
|---|---|---|---|
| Date: | 10/20/2023 | Appraiser: | *Tim Garthwaite* |
| Date: | 10/20/2023 | Umpire: | *Tom Voss* |

(Doc. 81-18 at 1.)  The Appraisal Panel however failed to clarify whether it awarded New Oil the compliance costs.  (See id.)

Believing the Appraisal Panel awarded compliance costs, New Oil hired RIE Construction to provide the final estimates to repair the roof.  RIE did so and provided their estimates to replace the roof.  (Doc. 78-4; Doc. 78-5.)  New Oil then presented the report to GuideOne for payment.  GuideOne denied any further liability, arguing that it fulfilled its obligations under the Policy when it paid New Oil the Actual Cash Value as awarded by the Appraisal Panel.  (Doc. 81-16.)

On May 28, 2024, New Oil moved for summary judgment, asking the Court to affirm the Appraisal Panel award, award New Oil the costs to comply

with Minneapolis's city code and ordinances, and award interest pursuant to

Minn. Stat. § 549.09.  (Doc. 76 at 4.)

On August 16, 2024, the Court ordered the Parties to conduct settlement

discussions.  (Doc. 85.)  The Parties however were unable to settle their dispute.

(Doc. 87.)  GuideOne then sought permission to file a cross-motion for summary

judgment, which the Court granted. (See Doc. 91.)  GuideOne also moved the

Court to affirm the Appraisal Panel award, believing that the Appraisal Panel

did not award compliance costs.  (Doc. 94 at 14.)

## III.    DISCUSSION

### A.    Summary Judgment Standard

Summary judgment is appropriate if, viewing all facts in the light most

favorable to the non-moving party, there is no genuine dispute as to any material

fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ.

P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The party seeking

summary judgment bears the burden of showing that there is no disputed issue

of material fact.  Celotex, 477 U.S. at 323.  "A dispute is genuine if the evidence is

such that it could cause a reasonable jury to return a verdict for either party; a

fact is material if its resolution affects the outcome of the case."  Amini v. City of

Minneapolis, 643 F.3d 1068, 1074 (8th Cir. 2011) (citing Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 248, 252 (1986)).

A party asserting a fact is disputed must cite to "particular parts of

materials in the record."  Neylon v. BNSF Ry. Co., 968 F.3d 724, 730 (8th Cir.

2020) (citing Fed. R. Civ. P. 56(c)(1)(A) and noting that plaintiff failed to cite

evidence supporting his statement).  "The nonmoving party's allegations must

be supported by "sufficient probative evidence that would permit a finding in

his favor on more than mere speculation, conjecture, or fantasy." Mann

v. Yarnell, 497 F.3d 822, 825 (8th Cir. 2007) (cleaned up) (quotation omitted).

### B.    Standard Governing Appraisals

In 2020, the Minnesota Supreme Court held that fire insurance appraisals

are not governed by the Minnesota Uniform Arbitration Act ("MUAA") because

appraisals are not agreements to arbitrate.  Oliver v. State Farm Fire & Cas. Ins.

Co., 939 N.W.2d 749, 753 (Minn. 2020).  This has been interpreted to apply more

broadly to all appraisals prescribed by insurance statutes. See Savanna Grove

Coach Homeowners' Ass'n v. Auto-Owners Ins. Co., No. 19-cv-1513 (ECT/TNL),

2020 WL 3397312, at *2-3 (D. Minn. June 19, 2020).   And, although the MUAA no

longer applies to appraisal awards, "Oliver did not eliminate a district court's

authority to modify an appraisal award." <u>Blueberry Bowl, LLC v. Midwest Fam.</u>

<u>Mut. Ins. Co.</u>, No. A23-0739, 2023 WL 4043806, at *2 (Minn. Ct. App. June 13,

2023).

Other judges in this district continue to apply the MUAA provisions in

cases involving the interpretation of an appraisal award because of the shared

underlying policy of appraisals and arbitrations.  <u>See, e.g.</u>, <u>Jamestown Villas</u>

<u>Homeowners Ass'n v. State Farm Fire & Cas. Co.</u>, No. CV 23-3475 (DWF/DLM),

2024 WL 4240340, at *2 n.1 (D. Minn. Sept. 19, 2024) (continuing to apply the

MUAA provisions in a case involving the interpretation of appraisal awards

because of the shared underlying policy of appraisal awards and arbitration

awards); <u>Maplebrook Estates Homeowner's Ass'n v. Hartford Fire Ins. Co.</u>, No.

21-cv-1532 (SRN/DJF), 2023 WL 5021164, at *10 (D. Minn. Aug. 7, 2023) (same);

<u>Cincinnati Ins. Co. v. Rymer Cos., LLC</u>, No. 19-cv-1025 (ECT/TNL), 2023 WL

088401, at *3 (D. Minn. June 20, 2023) (same).  As such, this Court will continue to

apply the MUAA provisions.

A "presumption of validity" applies to an appraisal award and "will not

be vacated unless it clearly appears that it was the result of fraud . . . or

wrongdoing on the part of the appraisers."  <u>Mork v. Eureka-Security Fire &</u>

Marine Ins. Co., 42 N.W.2d 33, 38 (Minn. 1950).  Despite this, an appraisal panel

is limited to deciding the "amount of loss."  Quade v. Secura Ins., 814 N.W.2d

703, 706 (Minn. 2012).  Liability is a question reserved for the courts.  Id. (citing

Itasca Paper Co. v. Niagara Fire Ins. Co., 220 N.W. 425, 426–27 (Minn. 1928)).

Courts defer to an appraisal panel's factual determination of the amount of loss.

Cedar Bluff Townhome Condo Ass'n v. Am. Fam. Mut. Ins. Co., 857 N.W.2d 290,

296 (Minn. 2014).

Deference however is not given to an ambiguous award.  Maplebrook,

2023 WL 5021164, at *10.  "A reviewing court is prohibited from ignoring the

ambiguity and summarily affirming the award."  Herll v. Auto-Owners Ins. Co.,

879 F.3d 293, 296 (8th Cir. 2018) (internal citations and quotations omitted.)  An

ambiguous award requires resubmission of the claim to the panel "to consider

whether to modify or correct the award . . . [or] to clarify the award." Minn. Stat.

§ 572B.20(d)(3).

Here, the Parties do not dispute that GuideOne is liable to New Oil.

Rather, the Parties dispute whether liability extends to cover costs to comply

with Minneapolis's city code and ordinances.  The Court concludes that it does.

1.      **Liability Under the Insurance Policy**

New Oil contends that the policy does cover these compliance costs,

whereas GuideOne argues otherwise.

The interpretation of the language of an insurance contract is usually a

legal question for the court to decide.  Murray v. Greenwich Ins. Co., 533 F.3d

644, 648 (8th Cir. 2008).  In a diversity case, generally, the interpretation of

Minnesota-issued insurance policies is a matter of Minnesota law.  Id.

Under Minnesota law, insurance policies are interpreted using general

principles of contract law. Midwest Fam. Mut. Ins. Co. v. Wolters, 831 N.W.2d

628, 636 (Minn. 2013).  The primary goal in interpreting a contract is to determine

and enforce the parties' intent.  Travertine Corp. v. Lexington-Silverwood, 683

N.W.2d 267, 271 (Minn. 2004).  If the written contract is clear and unambiguous,

then it should not be rewritten, modified, or limited by a strained construction.

Savela v. City of Duluth, 806 N.W.2d 793, 797 (Minn. 2011).

"Exclusions in a policy or endorsements are as much a part of the contract

as other parts thereof and must be given the same consideration in determining

what is the coverage."  Grinnell Mut. Reins. Co. v. Schwieger, 685 F.3d 697, 701

(8th Cir. 2012) (quoting Bobich v. Oja, 104 N.W.2d 19, 24-25) (Minn. 1960)).  The

burden of establishing an exclusion that defeats coverage is held by the insurer.

Amos by Amos v. Campbell, 593 N.W.2d 263, 266 (Minn. Ct. App. 1999).

Exclusions are interpreted strictly against the insurer.  Travelers Indemn.

Co. v. Bloomington Steel & Supply Co., 788 N.W.2d 888, 895 (Minn. 2006).

Ambiguity in an agreement is construed against the insurer.  American

Commerce Ins. Brokers, Inc. v. Minnesota Mut. Fire and Cas. Co., 551 N.W.2d

224, 227- 228 (Minn. 1996).

Minnesota law requires that:

> Subject to any applicable policy limits, where an insurer offers
> replacement cost insurance: (i) the insurance must cover the cost of
> replacing, rebuilding, or repairing any loss or damaged property in
> accordance with the minimum code as required by state or local
> authorities . . . .  In the case of a partial loss, unless more extensive
> coverage is otherwise specified in the policy, this coverage applies
> only to the damaged portion of the property.

Minn. Stat. § 65A.10, subd. 1.

### a.  GuideOne's Arguments

GuideOne argues that the Appraisal Panel considered the compliance

costs but concedes that the panel failed to respond to the inquiry as to whether it

awarded New Oil these costs.  (Doc. 80 at 14-17.)  Alternatively, GuideOne

appears to argue that New Oil is not entitled to the compliance costs because the

policy limits recovery for damages to the roof to only the Actual Cash Value.

(Doc. 94 at 18-19.)  GuideOne refers to language in the policy that states:

"Replacement Cost coverage . . . does not apply to roof surfacing.  Instead, we

will determine the value of roof surfacing at actual cash value at the time of loss

or damage." (Id. at 4. (quoting Doc. 81-1 at 11).)  GuideOne also contends that,

under the Policy, the compliance costs are only recoverable if the repairs were

made within 2 years of the damage.  (Id.)

### b.  New Oil's Arguments

New Oil argues that Minn. Stat § 65A.10 applies and requires GuideOne to

pay the compliance costs.  (Doc. 99 at 13.)  New Oil relies on St. Matthews

Church of God & Christ v. State Farm Fire & Cas. Co., 981 N.W.2d 760, 769

(Minn. 2022), which holds that the obligation of an insurer "to bring the

damaged portion of the property up to minimum code" under section 65A.10 is

"limited to repairs necessary to bring up to code that part of the property that

was damaged in the insured event."  New Oil also contends that filing this legal

action tolled the limitation period for making the repairs to comply with the

city's code.  (Id. at 14.)  New Oil avers that not tolling the limitation period

would incentivize insurance companies to delay the claims process to avoid

paying these costs.  (Id. at 15.)

### c.  Analysis

Here, GuideOne issued a replacement cost policy to cover New Oil's

church building but limited recovery for the roof surfacing to the actual cash

value of the roof and placed a 2-year time limit to make any compliance repairs.

(See Doc. 81-1 at 1.)  Although the policy limits the value of roof surfacing to the

actual cash value, GuideOne is required to pay for the compliance costs because

at issue are the compliance costs to allow for the repairs for the entire roof

damaged by the storm—not just the value of the roof surfacing.

This case is akin to Great Nw. Ins. Co. v. Campbell, 3 N.W.3d 59 (Minn. Ct.

App. 2024), review granted (May 14, 2024).  In Campbell, the insurer sold the

insured a replacement cost insurance policy that covered the cost of replacing

shingles, but the policy excluded coverage for sheathing.  3 N.W.3d at 67.

Notwithstanding the policy language, the Minnesota Court of Appeals

concluded that Minnesota law required the insurer to cover the cost of the

sheathing because the existing decking, which did not comply with the shingle

manufacturer's instructions and the state building code, was damaged and could

not be made compliant unless it was repaired and proper sheathing was placed on top to bring it up to code prior to installing the new shingles.  Id.

Moreover, as acknowledged in St. Matthews, Minn. Stat. § 65A.10, subd. 1, set the statutory minimum that an insurer must provide in a replacement cost coverage policy.  981 N.W.2d at 769.  Therefore, Minn. Stat. § 65A.10 requires GuideOne to cover the compliance costs.

Next, the Court turns to the limitation period.  Whether a contractual limitation is reasonable or not "is to be decided on a case-by-case basis, looking at the particular facts of each case."  Harmony E. Condo. Ass'n v. Falls Lake Fire & Cas. Co., No. 24-CV-2048 (SRN/ECW), 2024 WL 5168333, at *2 (D. Minn. Dec. 19, 2024) (quoting Henning Nelson Const. Co. v. Fireman's Fund Am. Life Ins. Co., 383 N.W.2d 645, 651 (Minn. 1986).)  An insurer can be estopped from asserting a time limitation contained in an insurance policy when the facts show that it would be "unjust, inequitable, or unconscionable" to do so.  L&H Transp., Inc. v. Drew Agency, Inc., 403 N.W.2d 223, 227 (Minn. 1987) (internal quotation omitted).

The Court concludes that equitable estoppel applies to the limitation period.  GuideOne is at fault for much of the delay in this case.  GuideOne

13

repeatedly denied any coverage for over a year, and it only agreed to appraisal after repeated requests by New Oil. As such, it would be unjust to allow GuideOne to assert the limitation. See Axis Surplus Ins. Co. v. Condor Corp., No. CV 20-789 (DSD/KMM), 2023 WL 1767269, at *2 (D. Minn. Feb. 3, 2023) (plaintiff reasonably waited to resolve coverage dispute before committing to replacement work that would have cost over $2,000,000, and the "delay was due to [insurer's] persistent denial of coverage . . . rather than [insured's] lack of action"). Also, as a matter of policy, allowing the limitation to bar the claim under these circumstances may incentivize insurance companies to delay the claims process to avoid paying these costs.

Accordingly, the Court concludes that GuideOne is liable for the compliance costs.

### 2.    Appraisal Award

The Court now turns to the amount owed. It is undisputed that New Oil and GuideOne asked the Appraisal Panel to clarify whether it awarded costs to comply with Minneapolis's city code and ordinances, but the Appraisal Panel failed to do so. This caused ambiguity as is evident by the Parties' cross-motions. Having determined that Defendant is liable for the compliance costs, the Court

remands this case back to the Appraisal Panel for further factual determinations as to the final costs to comply with Minneapolis's city code and ordinances. See Cedar Bluff, 857 N.W.2d at 296.

### C.    Interest Pursuant to Minn. Stat. § 549.09

Pre-award interest begins to accrue at "the time of the commencement of the action or a demand for arbitration, or the time of written notice of claim, whichever occurs first, except as provided herein." Minn. Stat. § 549.09, subd. 1(b).  For a written notice of claim to be considered a triggering event for accrual purposes under Minn. Stat. § 549.09, it must sufficiently advise of the nature of the damages, and it must demand prompt payment.  See General Mills Operations v. Five Star Custom Foods, 845 F. Supp. 2d 975, 978 (D. Minn. 2012) (based on dictionary definition of "claim" the term "written notice of claim" in Minn. Stat. § 549.09 refers to "a demand for payment (or other similar assertion) contained in a writing.")  Under Minn. Stat. § 549.09, there is a flat 10 percent prejudgment interest rate where damages exceed $50,000.

In Minnesota, post-award interest accrues annually on "the unpaid balance of the judgment or award from the time that it is entered or made until it is paid, at the annual rate provided in subdivision 1." Minn. Stat. § 549.09, subd. 2.

The Parties agree that pre-award and post-award interest is due.  Therefore, the Court will grant summary judgment on this issue as well.  However, the final determination as to the amounts owed is reserved until after the Appraisal Panel determines the compliance costs.

## IV.    ORDER

Based on the foregoing reasons, as well as the files, records, and proceedings herein, **IT IS HEREBY ORDERED:**

1.  Plaintiff New Oil Christian Center's Motion for Partial-Summary Judgment **[Doc. 73]** is **GRANTED**;

2.  Defendant GuideOne Mutual Insurance Company's Motion for Summary Judgment **[Doc. 92]** is **DENIED;**

3.  The Court **REMANDS** this case back to the Appraisal Panel to determine the costs to comply with Minneapolis's city code and ordinances; and

4.  The Parties shall file the Appraisal Panel's conclusions with the Court when it is received and file briefing limited to 1 page as to the Parties' positions regarding the pre-award and post-award interest owed.

Dated:  February 27, 2025                    s/Michael J. Davis
                                             Michael J. Davis
                                             United States District Court